UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LESA NASH,                          :
                    Plaintiff,      :
                                    :
          v.                        :          CA 10-493 S
                                    :
GMAC MORTGAGE, LLC, ORLANS          :
MORAN PLLC, and JULIE MORAN,        :
                    Defendants.     :

### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court are two motions: 1) GMAC Mortgage, LLC's Motion to Dismiss (Docket ("Dkt.") #15) ("GMAC Motion to Dismiss"); and 2) Motion to Dismiss of Defendants[1] OrlansMoran PLLC and Julie Moran Pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. #14) ("Orlans Moran Motion to Dismiss"[1]) (collectively the "Motions to Dismiss" or "Motions"). The Motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for preliminary review, findings, and recommended disposition. A hearing was conducted on April 5, 2011. After reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motions to Dismiss be granted.

## I. Synopsis

Plaintiff Lesa Nash ("Plaintiff") has brought "this wrongful foreclosure lawsuit [against] Defendants GMAC Mortgage and their

---

[1] Defendants Orlans Moran PLLC ("Orlans Moran") and Julie Moran, Esq. ("Attorney Moran"), have filed a joint motion to dismiss. Accordingly, the Court refers to it as "Orlans Moran Motion to Dismiss."

trustee Orlans/Moran PLLC, Julie Moran, Esq.[,] for unfair unjust enrichment, poor business practices, illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." Amended Complaint and More Definite Statement (Dkt. #12) ("Amended Complaint") at 1. The Amended Complaint contains counts alleging negligence (Count 1); fraud (Count 2); to set aside trustee's sale and stay of pending foreclosure action (Count 3); wrongful foreclosure (Count 4); breach of contract (Count 5); breach of the implied covenant of good faith and fair dealing (Count 6); and unjust enrichment (Count 7). As to all counts, Plaintiff seeks the following relief against Defendant GMAC Mortgage, LLC ("GMAC"):

> That the [C]ourt require GMAC Mortgage to calculate the payoff amount of Plaintiff['']s mortgage to their lowest mortgage interest rate available, and make a total monthly payment including escrow of no more than $950.00 per month as recommended by Springboard (HAMP[2]) Action Plan.

Amended Complaint at 2-6. Also as to all counts, Plaintiff seeks the following relief against Defendants Orlans Moran PLLC ("Orlans Moran") and Attorney Julie Moran ("Attorney Moran"):

> That the [C]ourt issue a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants Orlans/Moran, and their respective Agents, attorneys and representatives, and all persons acting in concert or participating with them, from selling[,] attempting to sell, or causing to be sold the

---

[2] "HAMP" refers to the Home Affordable Modification Program. <u>See</u> Amended Complaint and More Definite Statement (Dkt. #12) ("Amended Complaint") at 1.

Property either in the power of sale in the Deed of Trust
or by foreclosure action.

Id.

## II.  Facts[3] and Travel

On or about February 1996, Plaintiff purchased certain real
property located in Chepachet, Rhode Island (the "Property"), for
approximately $119,000.00.  Amended Complaint at 6.  In order to
lower a high interest rate, on or about August 17, 1998, Plaintiff
refinanced the loan on the Property through Accubanc Mortgage
Corporation ("Accubanc") and executed a promissory note "with no
cash out."  Id. at 7; see also incorporated memorandum in support
of GMAC Motion to Dismiss ("GMAC Mem."), Exhibit ("Ex.") A (Note);
id., Ex. B (Mortgage).[4]  Plaintiff made each payment on the thirty-
year note for approximately twelve years.  Amended Complaint at 7.
During this time, Accubanc sold the mortgage note to GMAC.  Id.;

---

[3] The facts are taken primarily from the allegations in Plaintiff's
Amended Complaint, which for purposes of the instant Motion are assumed
to be true, see Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 13
(1st Cir. 2009)(stating that where question is dismissal pursuant to Fed.
R. Civ. P. 12(b)(6), the court "assume[s] the truth of all well-pleaded
facts in the complaint and indulge[s] all reasonable inferences that fit
the plaintiff's stated theory of liability")(internal quotation marks
omitted).

[4] The Court may consider the note, mortgage, and other documents
appended to the incorporated memorandum in support of GMAC Motion to
Dismiss ("GMAC Mem.") because Plaintiff has referenced them, incorporated
them into her Complaint, and relied upon them in framing her Amended
Complaint and also because the mortgage is a matter of public record.
See Mississippi Public Employees' Retirement System v. Boston Scientific
Corp., 523 F.3d 75, 86 (1st Cir. 2008)(noting sources courts ordinarily
examine when ruling on 12(b)(6) motions to dismiss, including documents
incorporated into the complaint by reference and matters of which a court
may take judicial notice).

see also Complaint, Ex. 10 (Assignment of Mortgage).[5]

After a downturn in the economy, Plaintiff in 2007 began to lose work, clients, and income.  See Amended Complaint at 7. Plaintiff began requesting a loan modification directly from GMAC. Id.  Repeatedly GMAC claimed that it had lost Plaintiff's paperwork or was missing information.  See id.  As of July 30, 2009, approximately $121,443,07 in principal, late fees, and other charges was due on the note and mortgage.  Id.  GMAC began foreclosure proceedings even though a modification was in process. Id.

Meanwhile, Plaintiff filed for bankruptcy on May 6, 2009.  Id. GMAC's attorneys requested relief from the automatic stay while Plaintiff was in bankruptcy.  Id.; see also Complaint, Ex. 7 (Motion for Relief from Stay and Memorandum in Support Thereof); id., Ex. 8 (Order Granting GMAC Mortgage, LLC, Successor by Merger with GMAC Mortgage Corporation Relief from Stay and Leave to Foreclose Mortgage).  Plaintiff again requested a loan modification under the "Making Home Affordable" program through Springboard, a HUD[6]-approved representative.  Amended Complaint at 7; see also

---

[5] Plaintiff has not attached all exhibits to the Amended Complaint that were attached to the original Complaint.  In deference to her pro se status, the Court considers all of Plaintiff's exhibits.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  As the exhibits to Plaintiff's Complaint are not numbered, for ease of reference the Court has performed this function.

[6] "HUD" is the acronym for the United States Department of Housing and Urban Development.  See Village West Assocs. v. Rhode Island Housing & Mortgage Finance Corp., 618 F.Supp.2d 134, 135 (D.R.I. 2009).

id., Ex. 1 (Springboard documents). The Bankruptcy Court discharged Plaintiff's debt and mortgage on October 5, 2009. Amended Complaint at 7.

On or about October 22, 2009, Plaintiff received documents regarding approval of her loan modification from GMAC. Id.; see also id., Ex. 2 (Letter from GMAC to Nash of 10/22/09). GMAC added the arrearage and other fees to bring the principal balance of the loan to $124,850.69 and added 120 months to the note. Amended Complaint at 7. There was no change in the interest rate, 6.5%, or monthly payments, as Plaintiff had requested. Id. at 8. Plaintiff signed the documents out of fear of foreclosure. Id.; see also Complaint, Ex. 12 (Fixed Rate Loan Modification Agreement).

Thereafter, Plaintiff again filed for a loan modification under HAMP and the "Making Home Affordable" program through a local HUD representative, Felicia A. Diaz, Director of HomeOwnership Programs at Neighborwork's Blackstone River Valley Home Ownership Center in Woonsocket, Rhode Island. Amended Complaint at 8. Plaintiff was denied any modification by GMAC, which cited "insufficient income" as the reason for the denial. Id.; see also Complaint, Ex. 5 (Email from Diaz to Nash of 6/1/10). Orlans Moran sent Plaintiff a letter on or about October 27, 2010, informing her that GMAC had instructed Orlans Moran to institute foreclosure proceedings on the mortgage. See Complaint, Ex. 2 (Letter from Moran to Nash of 10/27/10). GMAC notified Plaintiff on or about

October 28, 2010, of its intent to foreclose.  See id., Ex. 3
(Notice of Intention to Foreclose and of Deficiency after
Foreclosure of Mortgage).

Plaintiff filed a complaint in Rhode Island Superior Court on
or about November 17, 2010, see Notice of Removal (Dkt. #1), Ex. A
(Complaint) at 4, and an addendum to that complaint on or about
December 1, 2010, see id. at 57-59.  On December 10, 2010, GMAC
removed the matter to this Court.  See Dkt.  Orlans Moran and
Attorney Moran joined in the removal on December 15, 2010.  See id.
A day later, on December 16, 2010, GMAC, Orlans Moran, and Attorney
Moran filed motions for a more definite statement.  See id.; see
also GMAC Mortgage, LLC's Motion for More Definite Statement (Dkt.
#4); Motion for More Definite Statement Pursuant to
Fed.R.Civ.P.12(e) (Dkt. #5) (collectively "Motions for More
Definite Statement").  The Court granted the Motions for More
Definite Statement on January 13, 2011.  See Order Granting Motions
for More Definite Statement (Dkt. #8).

Plaintiff on February 23, 2011, filed her Amended Complaint.
See Dkt.  GMAC, Orlans Moran, and Attorney Moran filed the instant
Motions to Dismiss on March 14, 2011.  See id.  Plaintiff's
Objection to Motion[s] to Dismiss filed by GMAC Mortgage, LLC,
Orlans Moran PLLC and Julie Moran (Dkt. #16) was filed on April 1,
2011.  See id.  The Court conducted a hearing on the Motions to
Dismiss on April 5, 2011, see id., after which the Motions were

6

taken under advisement.

## III. Law

### A.  Pro Se Status

Plaintiff is proceeding pro se, and her Amended Complaint is held to a less stringent standard than one drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); see also United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se complaints less strictly than lawyer-drafted pleadings"). The Court is required to liberally construe a pro se complaint. See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993).  At the same time, a plaintiff's pro se status does not excuse him from complying with procedural rules.  See Instituto de Educacion Universal Corp. v. U.S. Dep't of Education, 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in Dutil v. Murphy, 550 F.3d 154 (1st Cir. 2008).  "[A]s a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Id. at 158 (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)(citing Haines, 404

U.S. at 520); Instituto de Educacion Universal Corp., 209 F.3d at 23)).

### B.  Rule 12(b)(6) Standard

In 2007, the Supreme Court altered the Rule 12(b)(6) standard in a manner which gives it more heft.  ACA Financial Guaranty Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008).  In "order to survive a motion to dismiss a complaint must allege 'a plausible entitlement to relief.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)).  This pleading standard applies to all civil actions.  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1953 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation."  Id. (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Id. (citing Twombly, 550 U.S. at 555).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. (citing Twombly, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain

8

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. (citing Twombly, 550 U.S. at 570); see also Sepúlveda-Villarini v. Dep't of Education of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.")(citing Iqbal, 129 S.Ct. at 1950-51). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Iqbal, 129 S.Ct. at 1949). The plausibility standard is not akin to a "probability requirement," id., but it asks for more than a sheer possibility that a defendant has acted unlawfully, id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 557).

In Iqbal, the Supreme Court explained that two working principles underlay its decision in Twombly. Id. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. (citing Twombly, 550 U.S. at 555). Thus, although for the purposes of a

motion to dismiss a court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1949-50.  While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Id. at 1950.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Id.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2)).  At the same time, "Twombly cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepúlveda-Villarini, 628 F.3d at 30.

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 129 S.Ct. at 1950.  While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The Iqbal court cited its analysis in Twombly as illustrative of this "two-pronged approach." Id.

## IV. Discussion

### A. GMAC Motion to Dismiss

GMAC contends that the allegations set forth in Plaintiff's Amended Complaint fail to state a claim as a matter of law. See GMAC Mem. at 2. GMAC further asserts that the Amended Complaint fails to comply with the Court's Order Granting Motions for More Definite Statement. See id.

#### 1. HAMP

The Court begins with Plaintiff's claims under HAMP, as that is the focus of the Amended Complaint, see Amended Complaint at 1 ("Plaintiff argues that because her mortgage is guaranteed by the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and she is eligible for the Home Affordable Modification Program ("HAMP"), GMAC was legally and equitably required to consider her for a loan modification under that program before instituting foreclosure action.").

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 ("EESA"), to "immediately provide authorization and facilities that the Secretary of the Treasury can use to

restore liquidity and stability to the financial system
of the United States[.]" 12 U.S.C. § 5201 et seq. The
statute directed the Secretary to implement a plan to
minimize foreclosures. Id. § 5220. To that end, the
Department of the Treasury, in conjunction with other
government institutions, created the Making Home
Affordable Program. HAMP is a component of this
initiative.

HAMP works "by providing financial incentives of
participating mortgage servicers [("servicers")] to
modify the terms of the eligible loans." Marks v. Bank
of Am., No: 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at
*5 (D. Ariz. June 22, 2010). Mortgagors may apply to
servicers for modification of home loans if the mortgagor
meets certain criteria. When considering modifications,
participating servicers are obliged to abide by
guidelines set forth by the Secretary of Treasury in the
Home Affordable Modification Program Guidelines
("Guidelines"). U.S. Dep't of the Treasury, Home
Affordable Modification Program Guidelines (Mar. 4,
2009). To assure compliance with these Guidelines, the
Secretary designated Freddie Mac to be a compliance
officer. Marks, 2010 WL 2572988, at *6. In that
capacity, Freddie Mac independently evaluates data
provided by the servicers to determine whether they are
properly assessing borrower eligibility.

Zoher v. Chase Home Financing, No. 10-14135-CIV, 2010 WL 4064798,

at *2 (S.D. Fla. Oct. 15, 2010)(alterations in original)(footnotes

omitted); see also id. at *1 ("HAMP is a program created by the

Department of Treasury and the Federal Housing Finance Agency,

which offers financial incentives to mortgage lenders who modify

the home loans of borrowers in danger of foreclosure. Mortgage

lenders or servicers enter 'servicer participation agreements' with

the government agreeing to abide by a set of guidelines in

evaluating applications for home mortgage modification.").

As was the case in Zoher, Plaintiff here claims that

Defendant, as a participant in HAMP, was required to modify her mortgage loan. Zoher, 2010 WL 4064798, at *2; Amended Complaint at 1. The Zoher court noted that:

> Plaintiffs in previous cases have brought these claims under two theories. First, claims have been brought alleging that HAMP allows a private right of action for modification of the contract between the plaintiff mortgagor and the defendant mortgagee. Second, some plaintiffs claim that a contract between the mortgage servicer and the government requires loan remodification and[,] therefore, they have rights as third-party beneficiaries of that contract.

2010 WL 4064798, at *2.

### a.   Private right of action

"[F]ederal courts have held that there is no private right of action under HAMP." Speleos v. BAC Home Loans Servicing, L.P., Civil Action No. 10-11503-NMG, 2010 WL 5174510, at *6 (D. Mass. Dec. 14, 2010)(citing cases); see also In re Fernandes, Bankruptcy No. 10-17925-FJB, 2011 WL 322017, at *2 (Bankr. D. Mass. Jan. 31, 2011)(agreeing with "those courts that have held that there is no private right of action under HAMP ...").

> Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.

Marks, 2010 WL 2572988, at *6; see also Zoher, 2010 WL 4064798, at *3 (quoting Marks and stating that "[t]he lack of any express authorization, in addition to the exclusive compliance authority

13

delegated to Freddie Mac, demonstrates that Congress did not intend to create a private right of action").

Moreover, this Court agrees with the Marks and Zoher courts that "there is no implied right of action under HAMP." Zoher, 2010 WL 4064798, at *3; see also Marks, 2010 WL 2572988, at *6 ("In addition to not expressly intending a private cause of action, the [c]ourt will not imply a right of action under the HAMP either."). To determine whether a federal statute was intended to create a private right of action, courts must consider four factors:

> (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted–that is, [whether] the statute create[s] a federal right in favor of the plaintiff; (2) whether there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether the cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to confer a cause of action based solely on federal law.

Zoher, 2010 WL 4064798, at *3 (quoting Marks, 2010 WL 2572988, at *6 (quoting Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080 (1975) (internal quotation marks omitted)))(alterations in original). The Marks and Zoher courts found that a claim to an implied private right of action under HAMP failed to satisfy any of the four requisite factors.[7] Marks, 2010 WL 2572988, at *7; see also Zoher,

---

[7] Specifically, the Marks and Zoher courts found that the plaintiff in each case was "not one of the class for whose 'especial benefit' the HAMP was enacted." 2010 WL 2572988, at *6. The Marks court reasoned that:

14

2010 WL 4064798, at *4.

Both the Marks and Zoher courts concluded that no private right of action under HAMP existed.  Marks, 2010 WL 2572988, at *6, *7; see also Zoher, 2010 WL 4064798, at *3, *4.  This Court finds

_____

> While [p]laintiff may be a part of a class of homeowners whom EESA and HAMP are *intended to benefit*, the statute sweeps much more broadly than their 'especial benefit.'  These statutes are addressed to large-scale economic phenomena affecting not only distressed homeowners, but also financial institutions and homeowners at large.  The statutes alter the mechanics of home foreclosure in an effort to stem the downward spiral of home prices as a national phenomenon. ...

2010 WL 2572988, at *6; see also Zoher, 2010 WL 4064798, at *3 (quoting Marks).
   Next, the Marks and Zoher courts found that there was no legislative intent to create a private cause of action under HAMP, Marks, 2010 WL 2572988, at *7 ("HAMP was intended to effectuate the goals of the EESA."); see also Zoher, 2010 WL 4064798, at *3 ("The EESA merely authorizes the Secretary of Treasury to implement plans as part of an overall effort to mitigate foreclosures.  It does not create an enforceable right to a loan modification that may be remedied by judicial proceedings.")(citation omitted), and that allowing plaintiffs to assert such cause of action would contravene clear legislative intent, Marks, 2010 WL 2572988, at *7 ("legislative history indicates that the right to initiate a cause of action lies with the Secretary via the Administrative Procedures Act"); see also Zoher, 2010 WL 4064798, at *3 (same).
   Recognizing an implied private cause of action would also not serve the underlying legislative scheme.  Zoher, 2010 WL 4064798, at *4; Marks, 2010 WL 2572988, at *7 ("Freddie Mac was designated as the compliance officer.  As such, the enforcement of the modification program is contemplated only from the top down.  Furthermore, the HAMP Guidelines already impose extensive data reporting requirements on servicers ...," and, therefore, "[p]laintiff's cause of action would not further the legislative intent because the HAMP Guidelines already designated a scheme to correct for any mortgagee wrongdoing."); see also Zoher, 2010 WL 4064798, at *4 ("Finding an implied private right of action for mortgagors would discourage servicers from participating in the program because they would be exposed to significant litigation expenses.").
   Lastly, real property interests and contract rights "are paradigms of state law concern."  Marks, 2010 WL 2572988, at *7.  Accordingly, "controversies involving real property and contract claims are 'generally relegated to state law.'"  Zoher, 2010 WL 4064798, at *4; see also Marks, 2010 WL 2572988, at *7 ("loan modification requirements for pending foreclosure proceedings[] are generally relegated to state law").

those courts' reasoning persuasive and concurs that there is no private right of action, either express or implied, under HAMP.

### b.   Third-party beneficiary

To the extent that Plaintiff claims to be a third-party beneficiary of a contract between GMAC and the government, such argument also fails.  See Zoher, 2010 WL 4064798, at *4.

> The question of whether borrowers can bring third-party breach of contract actions against their lenders in order to enforce the HAMP Guidelines has not been decided by the First Circuit.  Most federal courts which have addressed that question have held that a borrower does not have standing under HAMP to bring a third-party beneficiary claim.

Speleos, 2010 WL 5174510, at *3 (citing cases).  Federal law controls the interpretation of the HAMP contract because one party to that contract is the United States.  Id.; see also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000).  Under federal common law, only intended beneficiaries may enforce a contract.  Speleos, 2010 WL 5174510, at *3.  Federal courts apply the Restatement (Second) of Contracts test to determine whether a party is an intended beneficiary of a contract.[8]  Id.

---

[8] The Speleos court quoted the Restatement (Second) of Contracts as follows:

> Section 313 of the Restatement (Second) of Contracts provides that a party is an intended third-party beneficiary to a government contract only if:
>
> > (a) the terms of the promise provide for such liability; or (b) the promisee is subject to liability to the member of the public for the damages and a direct action

16

To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party.  The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.  One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her.

Parties that benefit from a government contract are generally assumed to be incidental beneficiaries,[9] and may not enforce the contract absent a clear intent to the contrary.  Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.

Klamath, 204 F.3d at 1211 (footnote and internal citations

omitted); see also id. at 2010 ("Before a third party can recover

---

against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Restatement (Second) of Contracts § 313.  Indications that a third-party action concerning a government contract is inappropriate include:

[the existence of] arrangements for governmental control over the litigation and settlement of claims, the likelihood of impairment of service or of excessive financial burden, and the availability of alternatives such as insurance.

Restatement (Second) of Contracts § 313 cmt. a.

Speleos v. BAC Home Loans Servicing, L.P., Civil Action No. 10-11503-NMG, 2010 WL 5174510, at *3 (D. Mass. Dec. 14, 2010).

[9] An incidental beneficiary is a beneficiary who is not an intended beneficiary.  Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000)(quoting Restatement (Second) of Contracts § 302).  There is a presumption that beneficiaries of government contracts are incidental beneficiaries.  Speleos v. BAC Home Loans Servicing, L.P., Civil Action No. 10-11503-NMG, 2010 WL 5174510, at *3 (D. Mass. Dec. 14, 2010)(citing Klamath).

under a contract, it must show that the contract was made for its direct benefit–that it is an intended beneficiary of the contract."); <u>Speleos</u>, 2010 WL 5174510, at *3 ("Section 313(2)(b) [of the Restatement (Second) of Contracts] requires a showing that the [p]laintiffs were intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it.").

> A mortgagor would not be reasonable in relying upon a 'servicer participation agreement' between servicers and the Department of Treasury because the servicer participation agreement does not require that servicers modify any loan that fits the criteria, it merely requires the servicers consider them. Thus, it would be unreasonable for a borrower to interpret the agreement as one that 'confer[s] a right' to a loan modification on him or her.

<u>Zoher</u>, 2010 WL 4064798, at *4 (alteration in original)(citations omitted); <u>see also</u> <u>Marks</u>, 2010 WL 2572988, at *3 ("Under the HAMP, a qualified borrower would not be reasonable in relying on an agreement between a participating servicer and the U.S. Department of Treasury as manifesting an intention to confer a right on the borrower because the agreement does not <i>require</i> that the participating servicer modify eligible loans. ... Thus, a borrower could not require the servicer to make any particular loan modification under the HAMP Agreement."); <u>Escobedo v. Countrywide Home Loans, Inc.</u>, No. 09cv1557 BTM(BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009)("A qualified borrower would not be reasonable in relying on the Agreement as manifesting an intention

to confer a right on him or her because the Agreement does not *require* that [defendant] modify eligible loans.").

Further, in <u>Klamath</u> the Ninth Circuit held that "a contract can be intended to benefit a party without giving that party the right to enforce the contract," <u>Speleos</u>, 2010 WL 5174510, at *5, and that "parties who benefit from government contracts are generally assumed to be incidental beneficiaries, and may not enforce the contract absent *clear intent* to the contrary," <u>Marks</u>, 2010 WL 2572988, at *3; <u>Zoher</u>, 2010 WL 4064798, at *5 (quoting <u>Marks</u>); <u>see also</u> <u>Klamath</u>, 204 F.3d at 1212 ("[T]he recitation of constituencies whose interest bear on a government contract does not grant these incidental beneficiaries enforceable rights. Vague, hortatory pronouncements in the Contract, by themselves, are insufficient to support [the plaintiffs'] claims that the United States and [the defendant] intended to assume a direct contractual obligation to [them].").   Other courts have reached the same conclusion. <u>See</u> <u>Speleos</u>, 2010 WL 5174510, at *5 ("[A]s a general proposition, public citizens are not intended third-party beneficiaries to government contracts despite the fact that such contracts are usually intended to benefit the public in some way."); <u>see also</u> <u>Wright v. Bank of America, N.A.</u>, No. CV 10-01723 JF (HRL), 2010 WL 2889117, at *4 (N.D. Cal. July 22, 2010)("The HAMP contract between [d]efendants and Fannie Mae obviously was entered into with the intent of aiding home-loan borrowers, but it

is equally obvious that the cont[r]act does not secure an enforceable right for non-parties."); <u>Simmons v. Countrywide Home Loans, Inc.</u>, Civil No. 09cv1245 JAH(JMA), 2010 WL 2635220, at *5 (S.D. Cal. 2010)("[T]he Agreement here was entered into in part for the benefit of qualified borrowers and with those borrowers in mind but the language of the contract does not demonstrate a clear intent by the parties to grant qualified borrowers the right to enforce the Agreement."); <u>Marks</u>, 2010 WL 2572988, at *5 ("As in <u>Klamath</u> and <u>Escobedo</u>, [Marks] is an incidental beneficiary to a governmental contract between [d]efendant and the U.S. Treasury. [Marks] claims that the contract was intended to benefit homeowners like her. However, [Marks'] claim does not plausibly meet the requisite 'clear intent' standard. While the intent of the HAMP might be to benefit qualified borrowers, statements of purpose are not enough to defeat the presumption against intended beneficiaries under government contracts. Rather, [Marks] is an incidental beneficiary because there is no clear intent to the contrary."); <u>Benito v. Indymac Mortgage Servs.</u>, No. 2:09-CV-001218-PMP-PAL, 2010 WL 2130648, at *7 (D. Nev. May 21, 2010)("Although the overall HAMP program undoubtedly has a goal of assisting homeowners, the HAMP contract does not express any intent to grant borrowers a right to enforce the HAMP contract between the government and the loan servicer."); <u>Escobedo</u>, 2009 WL 4981618, at *2 ("As in <u>Klamath</u>, the Agreement was entered into in part for the benefit of qualified

borrowers and with these borrowers in mind.  However, the language of the contract does not show that the parties intended to grant qualified borrowers the right to enforce the Agreement.").

Thus, although Plaintiff states that "the goal of the [HAMP] program is to help troubled borrowers who have defaulted on their mortgages, or whose default is imminent, keep their homes," Amended Complaint at 1, she is no more than an incidental beneficiary of the HAMP contract between GMAC and the government, and "[i]t is axiomatic in contract law that an incidental beneficiary cannot enforce the contract," Zoher, 2010 WL 4064798, at *4 (quoting Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277, 279 (Fla. 1985)).  Accordingly, even if GMAC violated the HAMP Guidelines as Plaintiff alleges,[10] she cannot enforce those Guidelines by the instant action.  See Wright, 2010 WL 2889117, at *3 (agreeing with defendants' argument that "even if they did

---

[10] GMAC argues that it did consider Plaintiff's applications for loan modification and, in fact, granted her a modification in October 2009. GMAC Mem. at 6.  Plaintiff's documents support this contention.  See Plaintiff's Objection to Motion[s] to Dismiss filed by GMAC Mortgage, LLC, Orlans Moran PLLC and Julie Moran (Dkt. #16), Ex. A (Letter from GMAC to Plaintiff of 10/22/09, notifying her that her request for loan modification had been approved); id., Ex. B (Email from Diaz to Plaintiff of 6/1/10 regarding rejection of 2010 loan modification application). As noted above, loan servicers are required to consider, not approve, loan modification applications.  See Wright v. Bank of America, N.A., No. CV 10-01723 JF (HRL), 2010 WL 2889117, at *4 ("A loan modification is never guaranteed.  At most, the Guidelines guarantee only that an eligible borrower will be evaluated  for a loan modification.")(citing HAMP Guidelines); Simmons v. Countrywide Home Loans, Inc., Civil No. 09cv1245 JAH(JMA), 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010)(noting that servicer participation agreement did not state that defendant "*must* modify all mortgages that meet the eligibility requirements[,] only that it is required to *consider* them").

breach its [sic] HAMP contract with Fannie Mae, [p]laintiff is not a third-party beneficiary of the contract and lacks standing to assert a HAMP-based breach of contract claim").

Moreover, the <u>Marks</u> court found that:

> If the [c]ourt were to grant [p]laintiff third-party beneficiary status, the [c]ourt would be opening the door to potentially 3-4 million homeowners filing individual claims.  Allowing such a large number of potential plaintiffs clearly contravenes the purpose of the HAMP as an administrative tool to effectuate the goals of the EESA.

2010 WL 2572988, at *4 (internal citation omitted).  The court additionally noted that "permitting these individual claims would undermine Freddie Mac's role as the compliance officer for the HAMP." <u>Id.</u>  Thus, in addition to a lack of clear intent under HAMP to allow third party claims, such claims are inconsistent with the policy underlying the statute.  See <u>Speleos</u>, 2010 WL 5174510, at *3.

### c.    Summary re HAMP

Applying the foregoing to the Amended Complaint, it is clear that Plaintiff has not stated a claim upon which relief can be granted.  See <u>In re Lopez</u>, No. 09-10346, 2011 WL 576820, at *7 (Bankr. D. Mass. Feb. 9, 2011)("While HAMP is intended to benefit homeowners by helping them avoid foreclosure, a majority of courts have held that HAMP affords no private right of action and that borrowers lack standing as third-party beneficiaries to enforce the HAMP guidelines ....")(footnote omitted); <u>Zoher</u>, 2010 WL 4064798,

at *5 (concluding that plaintiff had not stated a claim upon which relief could be granted because "there is no private right of action under HAMP" and "[t]he servicer participation agreements have no language indicating that mortgagors should be viewed as intended beneficiaries able to enforce the contract"); <u>Marks</u>, 2010 WL 2572988, at *7 (granting defendant's 12(b)(6) motion to dismiss because plaintiff "does not have an express or implied private right of action to sue for violations of the HAMP" and also "[b]ecause [p]laintiff is an incidental and not an intended beneficiary" of HAMP).  Accordingly, I recommend that GMAC's Motion to Dismiss should be granted as to Plaintiff's claims related to HAMP.

      **2.   Other claims**

          **a.   Negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing**

Plaintiff's claims for negligence, <u>see</u> Amended Complaint at 2 ("[B]oth GMAC Mortgage and Orlans [Moran] proceeded with foreclosure action while Plaintiff was a qualified applicant in the HAMP program."), breach of contract, <u>see</u> <u>id.</u> at 4 ("Plaintiff contends that the HAMP program is a contractual obligation of GMAC Mortgage."), and breach of the implied covenant of good faith and fair dealing, <u>see</u> <u>id.</u> at 5, rely on Plaintiff's purported status to enforce HAMP.  Because she cannot do so, these claims must fail. <u>See</u> <u>Speleos</u>, 2010 WL 5174510, at *6 (agreeing with defendants'

position that because there is no private cause of action under HAMP, such claim could not be brought as a common law negligence claim); Clark v. Countrywide Home Loans, Inc., 732 F.Supp.2d 1038, 1044 (E.D. Cal. 2010)("Financial institutions owe no duty of care to a borrower when the institution's involvement in the loan does not exceed the scope of its conventional role as a mere lender of money."); see also McKensi v. Bank of America, N.A., CIVIL ACTION NO. 09-11940-JGD, 2010 U.S. Dist. LEXIS 99540, at *11 (D. Mass. Sept. 22, 2010)(noting, in action brought under HAMP, that "efforts to enforce the express terms of a contract do not constitute a breach of contract"); id. at *13 (stating that "acting in accordance with [a loan's] terms does not constitute a breach of the implied obligation of good faith and fair dealing"); Woods Corporate Assocs. v. Signet Star Holdings, Inc., 910 F.Supp. 1019, 1034 (D.N.J. 1995)("By refusing to execute an agreement to renegotiate the loan, [the defendant] did nothing more than exercise its contractual rights to protect its interest in the security. ... [The defendant] had no obligation to agree to a loan modification, and its failure to do so cannot be said to be 'bad faith.'").

### b.   Fraud

With regard to Plaintiff's claim for fraud, see Amended Complaint at 3 ("[B]oth GMAC Mortgage and Orlans [Moran] proceeded with foreclosure action while Plaintiff was a qualified applicant

24

in the HAMP program."), GMAC correctly notes that Plaintiff "still fails to plead sufficiently the elements of fraud," GMAC Mem. at 9. According to GMAC, Plaintiff "fails to identify any actual misrepresentations of fact made to her by GMAC, let alone identify who issued a false statement, when, and to whom.  Nor does she allege that she relied to her detriment on any alleged false statements made by GMAC."  Id.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991)("[F]raud and misrepresentation must, under the Civil Rules, be pleaded with specificity.  This rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations.")(internal citations omitted); Order Granting Motions for More Definite Statement at 2 n.1.  Here, the only specific allegation Plaintiff makes with regard to her fraud claim is the above-quoted statement.  The "Background" section of the Amended Complaint provides little further illumination.[11]  See Amended Complaint at 6-8.  Accordingly,

---

[11] Presumably Plaintiff intends to allege that GMAC's reason for denying her second request for loan modification, "insufficient income," Amended Complaint at 8, is false.  However, even assuming that the stated reason is false, Plaintiff has not shown that GMAC knew the statement was false, see FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 105 (1st Cir.

Plaintiff has not stated a claim for fraud upon which relief can be granted. Cf. Hart v. Countrywide Home Loans, Inc., 735 F.Supp.2d 741, 749 (E.D. Mich. 2010)(noting that plaintiff's misrepresentation claim "fails because [p]laintiff has not shown that [d]efendant made a material representation that was false"); Hogan v. Riemer, 619 N.E.2d 984, 988 (Mass. App. Ct. 1993)("There are absent the essential elements of misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.")

### c. Wrongful foreclosure and stay of pending foreclosure action

Regarding Plaintiff's wrongful foreclosure claim:

> An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that **at the time the power of sale was exercised or the foreclosure occurred,** no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale.

Collins v. Union Federal Savings & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983)(bold added). Here, no foreclosure has occurred. See Smith v. World Savings & Loan Ass'n, No. 2:10-CV-02855 JAM-JFM, 2011 WL 338495, at *4 (E.D. Cal. Jan. 31, 2011)("Without a foreclosure, [p]laintiff cannot plead ... foreclosure avoidance or wrongful foreclosure."). Thus, the alternative remedies for wrongful foreclosure, either allowing the wrongful foreclosure to

---

2009), or that Plaintiff reasonably relied on such statement to her detriment, see id.

stand and asking for damages or seeking to have the wrongful foreclosure set aside, see National Life Insurance Co. v. Silverman, 454 F.2d 899, 905 (D.C. Cir. 1971), are not available and Plaintiff's claim is premature, see Collins, 662 P.2d at 623 (making clear that tort of wrongful foreclosure arises after foreclosure has occurred). Relatedly, as to Plaintiff's request to stay pending foreclosure action, see Amended Complaint at 3, there is no pending foreclosure to stay, see Smith, 2011 WL 338495, at *4 (noting that "the Notice of Default was rescinded and the foreclosure was not completed").

### d.   Unjust enrichment

With respect to Plaintiff's claim of unjust enrichment, she states:

> Plaintiff received documents from GMAC Mortgage on or about October 22, shortly after the 2009 bankruptcy discharge. GMAC Mortgage added arrearage and other fees to bring the principal balance of the loan to $124,850.69. Then GMAC Mortgage ADDED 120 MONTHS TO THE NOTE, with complete disregard for 12 years, or 144 MONTHS in principal and interest they had already received on the note. There was no modification of monthly payment amount or interest rate, as the Plaintiff had requested, and pursuant to the Springboard Proposed Monthly Budget. Plaintiff signed the documents out of fear of foreclosure.

Amended Complaint at 6. According to GMAC, Plaintiff "appears to assert that GMAC was unjustly enriched by raising the principal balance, refusing to lower the interest rate or her monthly payment, and extending the term of the Note by ten years in connection with the 2009 Loan Modification Agreement." GMAC Mem.

27

at 10.

"In Rhode Island, unjust enrichment and quasi-contractual or implied contractual liability rests upon the equitable principle that one shall not be permitted to enrich himself unjustly at the expense of another or to receive property and benefits without making compensation therefor." Cazabat v. Metropolitan Property & Casualty Insurance Co., No. C.A. KC99-0544, 2000 WL 1910089, at *7 (R.I. Super. Ct. Apr. 24, 2000)(internal quotation marks omitted); see also Rhode Island Hospital Trust Co. v. Rhode Island Covering Co., 190 A.2d 219, 220-21 (R.I. 1963)("The doctrine of unjust enrichment is equitable in its nature, and generally it is applied to permit a recovery where one person has received a benefit from another and the retention thereof would be unjust ...."). However, "[i]t is well settled that where there is an express contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject matter." Mehan v. Gershkoff, 230 A.2d 867, 870 (R.I. 1967); Cazabat, 2000 WL 1910089, at *7 (quoting Mehan). The Note, as amended by the 2009 Loan Modification Agreement, constitutes an express contract between the parties. Accordingly, Plaintiff cannot assert that GMAC was unjustly enriched. See Okmyansky v. Herbalife International of America, Inc., 415 F.3d 154, 162 (1st Cir. 2005)("The plaintiff concedes the existence of a valid express contract between the parties—and the existence of such a contract

bars the application of the equitable doctrines that he belatedly invokes."); id. ("an express contract leaves 'no room ... for recovery on principles of unjust enrichment'")(quoting Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956))(alteration in original).

Plaintiff's allegation that she signed the 2009 Loan Modification documents "out of fear of foreclosure," Amended Complaint at 6, does not alter this result. In order to show economic duress, a party must demonstrate: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." International Underwater Contractors, Inc. v. New England Telephone & Telegraph Co., 393 N.E.2d 968, 970 (Mass. App. Ct. 1979)(quoting Urban Plumbing & Heating Co. v. United States, 408 F.2d 382, 389 (Ct. Cl. 1969)); see also FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d at 106 (quoting International Underwater Contractors); Ismert v. New England Mutual Life Insurance Co., 801 F.2d 536, 543 (1st Cir. 1986)(same). However, "[a] borrower's anxiety, sense of external pressure, and need for the funds is not a sound basis for relieving the borrower from the obligations the borrower has subscribed to in the loan documents." Hogan, 619 N.E.2d at 988; see also id. (finding that plaintiff's claimed anxiety and pressure from divorce proceedings was not basis for repudiation of legal

agreement and stating that "[d]uring the three days after the closing when [the plaintiff] had the right, under the loan documents, to reconsider and rescind the loan, she did not avail herself of that right, although she was then relieved of the possibly heightened pressure of the closing room").

### 3.   **Failure to comply with Court's order**

Because the Court has found that Plaintiff's allegations do not state a claim upon which relief can be granted, the Court need not address GMAC's alternative argument that the Amended Complaint fails to comply with the Court's Order Granting Motions for More Definite Statement.

### 4.   **Summary re GMAC**

The Court finds that Plaintiff has failed to state claims against GMAC on which relief can be granted for the following reasons.  There is no express or implied private right of action in HAMP.  Plaintiff is an incidental, not intended, beneficiary under HAMP and, therefore, has no right to enforce HAMP.  Plaintiff's related claims for negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing also fail. Plaintiff has not pled fraud with specificity as required by Fed. R. Civ. P. 9(b).  Plaintiff cannot claim wrongful foreclosure since no foreclosure has occurred.  Finally, Plaintiff cannot sue for unjust enrichment given the existence of a contract between her and GMAC.  Accordingly, I recommend that GMAC's Motion to Dismiss be

granted.

**B.   Orlans Moran Motion to Dismiss**

Orlans Moran and Attorney Moran argue that, as to them, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.  See Orlans Moran Motion to Dismiss.

**1.   Mootness**

Orlans Moran[12] first argues that the relief requested by Plaintiff, specifically "a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants Orlans/Moran[] and their respective Agents, attorneys and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the Property either in the power of sale in the Deed of Trust or by foreclosure action,"  Orlans Moran Mem. at 3 (quoting Amended Complaint), is moot, see id.  Orlans Moran further notes that "it is enough to request such relief from [GMAC] without naming the law firm or specific attorney since any action enjoining the bank would need to be honored by the bank's representatives."  Id.

Orlans Moran represents that on December 9, 2010, it cancelled the auction scheduled for December 21, 2010, and that no new

---

[12] Because Orlans Moran and Attorney Moran have filed a joint motion to dismiss, see n.1, and joint memorandum in support thereof, see Memorandum in Support of Motion to Dismiss of Defendants[] OrlansMoran PLLC and Julie Moran Pursuant to Fed.R.Civ.P. 12(b)(6) ("Orlans Moran Mem."), for convenience the court refers to Orlans Moran and Attorney Moran collectively as "Orlans Moran" in discussing the grounds for dismissal raised by them.

auction date has been set.  See id.  The Amended Complaint contains
no allegations to the contrary.  Accordingly, there is no pending
sale to enjoin.  See Smith, 2011 WL 338495, at *4 ("Plaintiff's two
foreclosure-related claims are moot because the Notice of Default
was rescinded and the foreclosure was not completed."); see also
Schwartz v. Bank of America, N.A., Civil Action No. 10-cv-01225-
WYD-MJW,  2011  WL  1135001,  at  *4  (D.  Colo.  Mar.  28,
2011)("Defendants have not yet attempted to renew any foreclosure
against Plaintiff.  Therefore, Plaintiff's complaints with respect
to technical defects in the original Foreclosure Proceeding ...
appear to be moot.").

### 2.   Lack of privity

Orlans Moran next contends that Orlans Moran and Attorney
Moran were not parties to any agreement with Plaintiff and cannot
be held liable with regard to any allegation relating to the
alleged failure of GMAC to modify Plaintiff's loan.  See Orlans
Moran Mem. at 4.  Orlans Moran notes that "[a]ny rights that the
Plaintiff may have are the result of loan documents signed by the
Plaintiff and bind the original lender, Accubanc Mortgage
Corporation now held by GMAC."  Id.  Thus, in Orlans Moran's view,
since there is no privity between Orlans Moran and Plaintiff there
can be no liability.  See id. (citing Village West Assocs. v. Rhode
Island Housing & Mortgage Finance Corp., 618 F.Supp.2d 134, 137 n.4
(D.R.I. 2009).

In <u>Village West Associates</u>, the Court noted that "[t]he parties agree, and are correct, that Village West cannot maintain a direct contract action against [third party defendant] HUD because of a lack of privity—its ... contract is with [the Rhode Island Housing and Mortgage Finance Corp.], not HUD." 618 F.Supp.2d at 137 n.4 (citing <u>National Leased Housing Ass'n v. United States</u>, 105 F.3d 1423, 1436-37 (Fed. Cir. 1997)). The instant matter presents a similar situation. Here, Plaintiff's contract is with GMAC, the holder of the note, not with Orlans Moran. Thus, because there is no privity between Plaintiff and Orlans Moran, there can be no liability on Orlans Moran's part with regard to the alleged actions of GMAC. <u>See</u> <u>id.</u>

### 3. Immunity

In addition, Orlans Moran asserts that "[g]enerally speaking an attorney is immune from liability to third persons arising form the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." Orlans Moran Mem. at 5 (quoting <u>Sain v. HSBC Mortgage Servs., Inc.</u>, Civil Action No.: 4:08-cv-2856-TLW-TER, 2009 U.S. Dist. LEXIS 77336, at *14 (D.S.C. Aug, 3, 2009))(internal quotation marks omitted); <u>see also</u> Rest. 3d of the Law Governing Lawyers § 1f ("With respect to claims of a nonclient, a lawyer is generally immune from liability for harm caused unintentionally except in limited circumstances ....."). Thus, in Orlans Moran's view, it cannot be held liable to

33

Plaintiff.  <u>See</u> Orlans Moran Mem. at 5.

In <u>Sain</u>, the plaintiff sued the law firm which represented a mortgage services company based on its participation in a foreclosure action.  2009 U.S. Dist. LEXIS 77336, at *14.  The court held that the firm was immune from liability for the plaintiff's claims except for one brought under the Fair Debt Collection Practices Act.[13]  <u>Id.</u> at *15.  Such is the case here.

### 4.  **Attorney Moran**

Further, Orlans Moran argues that since the firm is immune from liability to a third party, "it is only logical that as a member of the PLLC, Julie Moran should not be liable to the Plaintiff."  Orlans Moran Mem. at 5.  Orlans Moran states that it is a Michigan Professional Limited Liability Company ("PLLC").  <u>See</u> Orlans Moran Mem. at 5.  Plaintiff has not alleged otherwise, nor has she provided evidence to the contrary.  <u>See generally</u> Amended Complaint.

Under Michigan law, a member of a PLLC is not liable for any of the acts, debts, or obligations of the company.  <u>See</u> Mich. Comp.

---

[13] The court in <u>Sain</u> noted that the Fourth Circuit had held that if an attorney fell within the definition of a debt collector under the Fair Debt Collection Practices Act, he or she was not immune from suit.  <u>See</u> <u>Sain v. HSBC Mortgage Servs., Inc.</u>, Civil Action No.: 4:08-cv-2856-TLW-TER, 2009 U.S. Dist. LEXIS 77336, at *14-15 (D.S.C. Aug. 3, 2009).  Here, there is no such claim with regard to Orlans Moran and Attorney Moran.  Indeed, at the April 5, 2011, hearing, Plaintiff stated that her only reason for bringing Orlans Moran and Attorney Moran into this action was that Orlans Moran advertised the foreclosure action and that when she called the firm regarding the instant lawsuit, she was told that Orlans Moran needed notice from GMAC.

Laws § 450.4501(4) (2002) ("Unless otherwise provided by law or in an operating agreement, a person that is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company."); Duray Development, LLC v. Perrin, 792 N.W.2d 749, 755 (Mich. Ct. App. 2010)("Once a limited liability company comes into existence, limited liability applies, and a member or manager is not liable for the acts, debts, or obligations of the company."). Moreover, Attorney Moran had no duty to Plaintiff. See Credit Union Central Falls v. Groff, 966 A.2d 1262, 1270 (R.I. 2009)("Generally, an attorney owes no duty to an adverse party."); see also Westport Insurance Corp. v. Cotten Schmidt, LLP, 605 F.Supp.2d 796, 801 (N.D. Tex. 2009)("So long as the attorney is engaged in the conduct at issue as part of the discharge of his duties in representing his client, that conduct is not independently actionable even if frivolous or without merit.").

### 5. Dismissal of GMAC claims

Finally, Orlans Moran asserts that since all claims made against GMAC are also made against Orlans Moran, and specifically relate to the relief requested as to Orlans Moran, if the Court dismisses Plaintiff's claims against GMAC "it is only logical that any such claim[s] should be dismissed as against Orlans [Moran]." Orlans Moran Mem. at 6.  The Court agrees.

35

### 6.   Summary re Orlans Moran and Attorney Moran

The Court finds that Plaintiff's Amended Complaint fails to state a claim against Orlans Moran and Attorney Moran upon which relief can be granted based on the following: the relief requested against these Defendants is moot; Orlans Moran and Attorney Moran were not parties to any agreement with Plaintiff; Orlans Moran and Attorney Moran are immune from liability to Plaintiff based on their performance of activities on behalf of their client; Attorney Moran, as a member of the PLLC, is not individually liable; and because the Court recommends that all claims against GMAC be dismissed, <u>see</u> Discussion Section IV. A. 4. <u>supra</u> at 30-31, and Plaintiff makes the same claims against Orlans Moran, Attorney Moran, and GMAC, the claims against Orlans Moran and Attorney Moran logically should also be dismissed.   Therefore, I recommend that all claims against Orlans Moran and Attorney Moran be dismissed.

## V.   Summary

The Court finds that the Amended Complaint fails to state a claim upon which relief can be granted as to GMAC, Orlans Moran, and Attorney Moran.   Accordingly, all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).   I so recommend.

## VI.   Conclusion

For the reasons explained above, I recommend that the Motions to Dismiss be granted.   Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of

36

Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 18, 2011